## Case No. 7,296.

### The JESSE WILLIAMSON, JR.

The BLANCHE PAGE and The JAMES A. BURDEN.

[17 Blatchf. 106.] 1

Circuit Court, S. D. New York. Aug. 28, 1879.

George A. Black, for schooner.
Robert D. Benedict, for tug and barge.

WAITE, Circuit Justice. The only question which I think it necessary to consider in this case is, whether the tug carried "two bright white mast-head lights vertically," or their legal equivalent. Rule 4 of the statutory navigation rules (Rev. St. § 4233), provides, that "steam vessels, when towing other vessels, shall carry two bright white mast-head lights vertically, in addition to their side lights, so as to distinguish them from other steam vessels. Each of these mast-head lights shall be of the same character and construction as the mast-head lights prescribed by rule 3;" that is to say (rule 3) "a bright white light, of such a character as to be visible on a dark night, with a clear atmosphere, at a distance of at least five miles, and so constructed as to show a uniform and unbroken light over an arc of the horizon of twenty points of the compass, and so fixed as to show the light ten points on each side of the vessel, namely, from right ahead to two points abaft the beam on either side." Such a light must be carried at the foremast-head of an ocean-going steamer, or a steamer carrying sail. Steam vessels not carrying sail and navigating bays, lakes, rivers, or other inland waters, are required, by rule 7, to carry, in addition to their colored lights, "a central range of two white lights, the after light being carried at an elevation of at least fifteen feet above the light at the head of the vessel. The head light shall be so constructed as to show a good light through twenty points of the compass, namely, from right ahead to two points abaft the beam on either side of the vessel, and the after light so as to show all around the horizon."

This tug could not carry a light at her mast-head, for she had no mast, but she could carry two bright white lights vertically, of a character to be visible five miles away on a dark night, with a clear atmosphere, and so constructed as to show a uniform and unbroken light ahead, and from ten points on one side to ten points on the other of the vessel. This would be a light of the character and construction which ocean steamers, and steamers carrying sail, are required to have at the foremast-head. I deem it unnecessary to decide, in this case, whether, if two lights of a power equal to what is required for mast-head lights, are suspended vertically on the flag-staff at the stern of a tug, in such a manner as to show a uniform and unbroken light ahead over an arc of twenty points of the compass, they would be the legal equivalent of two mast-head lights; for, I am clear, that, unless there are two lights of that power and efficiency, carried vertically somewhere on the vessel, rule 4 is not complied with.

That such lights were not carried on this tug is very apparent from the evidence. It is conceded, that ordinary globe lanterns only were used. The mate, when acting as lookout on the schooner, must have been vigilant. He saw, first, the green light, then the white at the head, then the red, and then the green shut in, as the tug approached and rounded the buoy, and put herself on

her course down the river. The head light was seen, while those from the flagstaff were not. The presumption is, that the light ahead was such as was required by rule 7, and, therefore, of the same character and construction as that prescribed by rule 3, for the mast-head. As that light was seen. the conclusion is irresistible, that the stern lights were not of the same power, or were not so placed as to present the view which the law required. This, under the circumstances, is not only a fault in law, but a fault in fact. The schooner, while, to my mind, in all particulars vigilant, was not actually informed that she was to meet a tow, until the hull of the barge loomed up out of the darkness, immediately ahead, almost at the very moment of the collision. Clearly, if the circumstances are such as to make it proper for a tug to keep a tow four to five hundred feet away from her, she should be specially careful not only to notify approaching vessels that a tow is following. but, as near as may be, where it is. A sailing vessel must hold her course while a steamer is keeping out of her way in passing, but this obligation continues only so long as the steamer is passing. The sailing vessel should, therefore, be told where the steamer is. and as, for the purposes of this rule, the tug and her tow are to be considered as one vessel, and that the tug, it is necessary that the required information should extend to both tow and tug. In the day time, the tug may assume that both will be seen from the sail vessel, and act accordingly; but, at night, and in the dark, this is impossible, and, consequently, the law has supplied a system of arbitrary signals, intended to make up for the loss of vision by day. If these signals are omitted, and the sailing vessel comes into collision for want of them. the loss must fall on the tug, where the fault lies.

There can be no doubt that this collision was caused, in part, at least, by a want of proper towing lights. Had the schooner been told, in the appropriate way, of the approach and presence of a tug and tow, she would have watched as well for the tow as the tug, and, if she had found the tow driven out of its course, as this one undoubtedly was, by force of the wind, or otherwise, she would have taken some measures herself to prevent a collision. From the manner in which this schooner was navigated, I have no doubt whatever, if she had known that a tow was following the barge, the loss never would have happened. She was keeping up as close to Throgg's Point as she could, in order to take advantage of the wind and save herself from going off too much to leeward, when she got by. There was room enough for her to keep off; and there can be no reasonable doubt that she would have done

so had she known it was necessary. Not knowing of the barge, she held her course, as she certainly had the right to do, with the information she had. In this I recognize fully the rule, that, while a tug must keep herself, as well as her tow, out of the way, a sailing vessel is not permitted to run down a tow, if it gets beyond the control of a tug, and she can, with reasonable effort, avoid it.

Holding, as I do, that a tug, while towing in inland waters, must exhibit vertically two bright white lights, of equal power with. the mast-head lights of sea-going steamers, so fixed as to present a uniform and unbroken light right ahead and ten points on either side, and that this tug was in .fault in this particular, it is unnecessary to inquire whether rule 9 of the board of supervising inspectors has the force of law, as a rule of navigation. By section 4412 of the Revised Statutes. the board has the right to "establish such regulations. to be observed by all steam vessels, in passing each other, as they shall. from time to time, deem necessary for safety," and, by section 4405. these rules, when approved by the secretary of the treasury, "have the force of law." The statutory navigation rules (section 4233, Rev. St., rule 8), prescribe lights for sailing vessels while being towed, but omit any provision for canal-boats, barges, &c., when towed, as is customary in rivers and other inland waters. This is an important omission, and, if there is really any doubt as to the power of the board to bind towing steamers by this rule, in passing sailing vessels, the necessary legislation to remedy the defect should at once be obtained. The absolute necessity there is for some such rule must certainly be acknowledged, if tugs are permitted to separate themselves long distances from their tows, and then make up the tow of any size or form they please.

I see no reason for disturbing the report of the commissioner as to the amount of damages. A decree may be prepared, dismissing the libel of Starin. with costs in both courts. and in favor of Sise and others, for $1,076 74. and interest on $627 86 from November 26th. 1875. and on $446 88 from November 20th. 1877, at six per cent., that being the amount allowed by the commissioner.